OPINION
{¶ 1} Tina Pyburn appeals from a judgment of the Clark County Court of Common Pleas, Domestic Relations Division, which designated Jason Woodruff as the residential parent of their daughter, O. Pyburn contends that the trial court's decision to name Woodruff as the residential parent was against the manifest weight of the evidence and that the trial court relied on inadmissible hearsay in its decision. For the reasons that follow, we will remand this matter *Page 2 
to the trial court for further consideration.
 I {¶ 2} Pyburn and Woodruff met when they were both on active duty in the United States Marine Corps in Kansas City. They were never married, and their romantic relationship ended before O. was born. Shortly after O.'s birth in 1999, Pyburn was transferred to another city, and she relocated with O. and her older son, W., several times. She continues to serve on active duty in the Marine Corps, and she has lived in Springfield, Ohio for several years. It is undisputed that Woodruff had minimal contact with O. at the time of her birth and virtually no contact with her for several years thereafter. In 2001, a Missouri court determined that Woddruff was O.'s father and ordered him to pay child support.
 {¶ 3} In 2005, when O. was 6 years old, Pyburn contacted Woodruff to ask if he would be willing to care for O. while she attended military training. Woodruff agreed, and O. lived with Woodruff and his wife in Missouri for approximately two months. Later in 2005, when Pyburn believed that she would soon be deployed to Iraq, the parties made arrangements for Woodruff to become O.'s temporary legal custodian during Pyburn's deployment. Woodruff filed the earlier Missouri decree in the Clark County, Ohio court of common pleas ("the trial court") and obtained a temporary order designating him legal custodian. However, Pyburn was never deployed.
 {¶ 4} O. went to visit with Woodruff again the summer of 2006. During this visit, Woodruff became concerned that O. had been sexually abused by Pyburn's older son, W., based on O.'s behavior and her statements about her physical contact with W. Woodruff contacted Pyburn about these concerns, and she indicated that she was aware of the allegations and had *Page 3 
addressed them with the children. Woodruff also sought professional help for O. and initiated an action under Kansas's Protection from Abuse Act. The trial court deferred to the Kansas court while the investigation proceeded, and O. remained with Woodruff.
 {¶ 5} In September 2006, Woodruff filed an action in the Kansas court seeking to register the 2001 Missouri judgment and to obtain custody of O. Because of the jurisdictional issues, the Kansas court deferred to the trial court and dismissed Woodruffs complaint. The trial court conducted a hearing on October 4, 2007, and January 24 and 25, 2008 to determine how O.'s best interests would be served and who would be the residential parent. In February 2008, the trial court named Woodruff as the residential parent, established visitation for Pyburn, and ordered Pyburn to pay child support.
 {¶ 6} Pyburn raises two assignments of error on appeal.
 II {¶ 7} Pyburn's first assignment of error states:
 {¶ 8} "THE TRIAL COURT ERRONEOUSLY ADMITTED AND RELIED ON INADMISSIBLE HEARSAY IN ITS DETERMINATION RESULTING IN A SUBSTANTIAL INJUSTICE."
 {¶ 9} Pyburn claims that the trial court erred in relying on exhibits that were attached to the guardian ad litem's report because she did not have an opportunity to cross examine those who had created the exhibits. These exhibits included emails, U. S. Marine Corps records about a court-martial action against Woodruff, an assessment of Woodruff s mental health status, a Kansas attorney's recommendation regarding a "child in need of care" finding under Kansas law, a parenting assessment of Pyburn, and reports of a social worker who saw O. for therapy. *Page 4 
Pyburn filed a motion to strike the attachments and objected to their use at the hearing. The trial court overruled Pyburn's objection, noting that she "had the opportunity to cross examine the Guardian Ad Litem" concerning the content of the report and attachments, although she did not do so. The court also found that the attachments to the guardian ad litem's report were "an exception to the hearsay rule." The court did not elaborate on this conclusion. The trial court relied upon and quoted the disputed exhibits in its judgment entry naming Woodruff as the residential parent.
 {¶ 10} With the exception of the parenting assessment completed by Stephen Yerian, the declarants in the exhibits attached to the guardian ad litem's report did not testify at trial. Insofar as these exhibits were offered for the truth of the matter asserted, we disagree with the trial court's conclusion that they did not constitute hearsay. The guardian ad litem's testimony at trial would not have remedied this problem, and Pyburn did not waive her objection to these exhibits by failing to call the guardian ad litem. Thus, the trial court should not have relied on these exhibits in reaching its decision.
 {¶ 11} In his brief, Woodruff relies on Presley v. Presley (1990), 71 Ohio App.3d 34, a Cuyahoga County case, for the proposition that an exception to the hearsay rule applied with respect to a social worker's report on her treatment of O. Woodruff contends that the medical information contained in the guardian ad litem report, including the "testimony of a social worker" who provided counseling to O., fell within the exception to the hearsay rule under Evid. R. 803(4) because it was provided to obtain treatment. Our own case law contradicts this view with respect to statements made by a child. See Dodson v. Bakle (Dec. 3, 1999), Clark App. No. 99-CA-15. *Page 5 
 {¶ 12} Even assuming, however, that the social worker could have testified about O.'s statements regarding her physical or psychological history and symptoms pursuant to Evid. R. 803(4) because these statements were made in the course of her treatment, the admissibility of such testimony would have required the presence of the social worker at the hearing. In this case, the social worker was not present at the hearing. The trial court relied on the social worker's statement, which was attached to the guardian ad litem's report. As such, the social worker's statement itself was hearsay, even if O.'s statements might, under different circumstances, have constituted an exception to the hearsay rule under Evid. R. 803(4). In other words, Evid. R. 803(4) might have permitted the social worker who treated O. to testify about O.'s own claims of abuse by her brother to the extent that they related to her treatment. It did not, however, permit the social worker to submit her own statement to the court about O.'s statements, when the social worker was likewise unavailable for cross-examination.
 {¶ 13} We have reviewed all of the evidence in this case. Although the admissible evidence might have supported the trial court's conclusion, it is clear from the trial court's judgment that the court placed considerable reliance on the inadmissible documents, and we cannot say its error was harmless. As such, we will reverse the judgment and remand this case to the trial court for further proceedings consistent with this opinion. Pyburn's second assignment of error, which asserts the judgment is against the manifest weight of the evidence, is overruled as moot. We suggest to the trial court that it maintain the status quo as to O.'s current living arrangement during the course of the further proceedings before the court.
 FAIN, J. and DONOVAN, J., concur. *Page 6 
Copies mailed to:
Linda Joanne Cushman
Robert N. Lancaster, Jr.
 Hon. Thomas J. Capper *Page 1